IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADEOYE O. ADEBOWALE, and RACHELLE B. SHROPSHIRE-ADEBOWALE,<br><br>    Plaintiffs,<br><br>    v.<br><br>KIRSTJEN NIELSEN,[1] Secretary of Homeland Security, L. FRANCIS CISSNA,[2] Director, U.S. Citizenship and Immigration Services, THOMAS CIOPPA,[3] District Director, USCIS Chicago District, and JEFFERSON SESSIONS,[4] Attorney General of the United States,<br><br>    Defendants. | No. 17-CV-00476<br><br>Judge John J. Tharp, Jr. |

## MEMORANDUM OPINION AND ORDER

### I.    BACKGROUND[5]

Plaintiff Adeoye Adebowale entered the United States from the United Kingdom in 2004 under the Visa Waiver Program. In March 2005, he applied for asylum in the United States, arguing that if he returned to the UK he would be persecuted on account of his race and Nigerian

---

[1] Substituted for Jeh Johnson pursuant to Fed. R. Civ. P. 17(a)(3) and (d); *cf.* Fed. R. App. P. 43(c)(2).

[2] Substituted for Alejandro Mayokas pursuant to Fed. R. Civ. P. 17(a)(3) and (d); cf. Fed. R. App. P. 43(c)(2).

[3] Substituted for Lori Pietropaolo pursuant to Fed. R. Civ. P. 17(a)(3) and (d); cf. Fed. R. App. P. 43(c)(2).

[4] Substituted for Loretta Lynch pursuant to Fed. R. Civ. P. 17(a)(3) and (d); *cf.* Fed. R. App. P. 43(c)(2).

[5] As this is a motion to dismiss, the Court accepts all well-pleaded facts as true and construes all inferences in favor of the plaintiff. *Zemeckis v. Global Credit & Collection Corp.*, 679 F.3d 632, 634 (7th Cir. 2012).

national origin. Compl. ¶ 16. According to Adebowale, British police harassed him (and arrested him on trumped up charges) in retaliation for his work as a human rights lawyer and due to pernicious stereotypes about Nigerians. *Id*. ¶¶ 16-20. United States Citizenship and Immigration Services (USCIS) conducted an asylum interview with Adebowale, which he believed to be a sham. The interviewer focused overwhelmingly on the validity of Adebowale's British passport. The interviewer subsequently referred the case to an immigration judge, who denied Adebowale's asylum petition when Adebowale failed to appear at his hearing and issued an *in absentia* order of removal. *Id*. ¶ 24. A day later, Adebowale filed a motion to reopen his asylum proceedings, which the immigration judge denied. *Id*. ¶ 25. Adebowale appealed that denial to the Board of Immigration Appeals, which affirmed the denial, and to the Seventh Circuit, which concluded it did not have jurisdiction over the appeal. *Id*. ¶ 25; *see also Adebowale v. Mukasey*, 546 F.3d 893 (7th Cir. 2008).

Notwithstanding the order of removal, Adebowale remained in the United States. In 2010, he married Rachelle Bonnet Shropshire (now Shropshire-Adebowale), a United States citizen. In October 2011, Shropshire filed an I-130 petition seeking to classify Adebowale as an immediate relative. A few months later, Adebowale filed an I-485 form seeking an adjustment of status to become a permanent resident. *Id*. ¶ 32. USCIS officer Dave De Somers interviewed Adebowale and Shropshire-Adebowale concerning their filings. De Somers asked them questions about their lives, and asked Adebowale if he had been sent a deportation letter by the Department of Homeland Security or Immigrations and Customs Enforcement. *Id*. ¶ 33. Adebowale denied having received such a letter. *Id*. A deportation letter, however, had been sent to Adebowale, but was erroneously sent to an incorrect old address. *Id*. Based on the letter, De Somers classified Adebowale as an absconder and determined that he did not have jurisdiction to

entertain Adebowale's adjustment of status petition. *Id*. ¶¶ 2, 34. While addressing Adebowale's petition, De Somers incorrectly marked on Adebowale's I-485 form that Adebowale was "chargeable to Nigeria," when in fact Adebowale entered the United States on a British passport. *Id*. ¶ 36.

In February 2015, Adebowale met with an attorney who informed him that the immigration judge who ordered his removal may not have had jurisdiction to do so, as Adebowale entered the country under the Visa Waiver Program. Although the complaint is unclear, it appears the attorney's theory was as follows: because Adebowale entered the United States under the Visa Waiver Program, he may not challenge his removal by any means other than claiming asylum. *See Bao Tai Nian v. Holder*, 683 F.3d 1227, 1228 (9th Cir. 2012). Once a VWP entrant claims asylum, he is brought before an immigration judge in an "asylum-only" proceeding, in which the judge "determines only whether the petitioner is entitled to asylum [or] withholding of removal," and may not issue a final order of removal. *Id.*; *see also* 8 C.F.R. § 208.2(c)(3)(i) ("During such proceedings, all parties are prohibited from raising or considering any other issues, including but not limited to issues of admissibility, deportability, eligibility for waivers, and eligibility for any other form of relief."). According to Adebowale, the order of removal entered against him is void because it was entered into by an immigration judge in such an "asylum-only" proceeding.

The attorney filed a new I-485 form seeking an adjustment of status for Adebowale. *Id*. ¶ 41. Shortly thereafter, Adebowale and the lawyer got into an argument over whether Adebowale needed to produce a birth certificate during which the attorney made a disparaging comment about Nigerians. *Id*. ¶ 43. The attorney's representation of Adebowale nonetheless continued, and Adebowale and Shropshire-Adebowale were interviewed by USCIS Officer

Sienko concerning Adebowale's new application. *Id*. ¶ 44. Officer Sienko was dismissive of Adebowale, asking why Adebowale was there since he was ordered removed and USCIS determined it had no jurisdiction over his previous adjustment of status application. *Id*. Sienko also stopped Adebowale from giving a complete answer to a question, indicating that she did not need to hear his answer because she was involved with Adebowale's 2012 adjustment of status proceedings. Sienko also seemed to question whether Adebowale's marriage was genuine. *Id*. ¶ 4. Adebowale's attorney explained to Sienko the purported legal error made by the immigration judge who ordered Adebowale's removal, and noted that USCIS's previous denial of jurisdiction over Adebowale's adjustment of status application relied on that error. *Id*. Unpersuaded, USCIS again denied that it had jurisdiction to entertain Adebowale's adjustment of status petition. *Id*. ¶ 2.[6]

During the course of both adjustment of status proceedings, Officers De Somers and Sienko took note of domestic violence allegations made against Adebowale by an ex-girlfriend. *Id*. ¶ 48. Adebowale denies the allegations. *Id*. In 2009, the ex-girlfriend obtained an ex parte protective order against Adebowale that was dismissed after a hearing in the Circuit Court of Cook County. *Id*. According to the complaint, DHS, USCIS, and ICE continue to preserve information concerning and rely on the allegations, but have not taken note of the fact that protective order against him was dismissed. *Id*.

Adebowale subsequently filed this lawsuit against the Secretary of Homeland Security, Attorney General, USCIS Director, and USCIS Chicago District Director seeking to vacate the decisions of Officers De Somers and Sienko denying that USCIS had jurisdiction over his

---

[6] The reason Officer Sienko did so is unclear; the complaint references numerous documents that it says are attached to the complaint, including Officer Sienko's letter denying jurisdiction, but no documents are actually attached.

adjustment of status applications. Adebowale's complaint also challenges USCIS's 2005 referral of his asylum petition to an immigration judge, and the immigration judge's decision to enter an order of removal. Finally, the complaint asks for an order of mandamus directing DHS and USCIS to expunge from its records all references to and reports based on the domestic violence allegations.

After Adebowale's complaint was filed, USCIS reversed course and determined that it had jurisdiction over Adebowale's adjustment of status petition. *See* August 1, 2017 USCIS Letter, ECF No. 18-1. A day later, USCIS denied Adebowale's adjustment of status petition on the merits. *See* August 2, 2017 USCIS Letter, ECF No. 18-2. The government now moves to dismiss Adebowale's complaint as moot, based on USCIS's decision to entertain his petition, and for a lack of subject matter jurisdiction.

## II. DISCUSSION

The government first argues that the Court lacks subject matter jurisdiction over Adebowale's challenges to his order of removal—that is, Adebowale's challenge to his initial referral to an immigration judge, and his challenge to the immigration judge's entry of an order of removal. The Court agrees that it lacks subject matter jurisdiction. Under 8 U.S.C. § 1252(a)(5), "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal." Adebowale argues that this Court nonetheless has subject matter jurisdiction over his challenges to his order of removal because he is challenging the very existence of an order of removal. But that argument is belied by the complaint, which concedes that an order of removal was entered against Adebowale. Compl. ¶ 24. Adebowale simply believes that entry of that order was legal error. Indeed, the complaint seeks a declaration that the order of removal was "*void ab initio*." The Court is not empowered to adjudicate such a claim, as § 1252(a)(5) bars the Court from

providing any relief that would necessarily deem an order of removal to be flawed. *Estrada v. Holder*, 604 F.3d 402, 408 (7th Cir. 2010) (holding that the district court lacked subject matter jurisdiction to adjudicate statutory and constitutional challenges to a rescission of lawful permanent citizenship where doing logically dictated that a subsequent order of removal "would necessarily be flawed"). For the same reason, it is irrelevant that the complaint alleges that Adebowale's counsel was ineffective in appealing the immigration judge's denial of Adebowale's motion to reopen his asylum proceedings to the Seventh Circuit. Application of § 1252(a)(5)'s jurisdictional bar "turn[s] on the substance of the relief that a plaintiff is seeking." *Martinez v. Napolitano*, 704 F.3d 620, 622 (9th Cir. 2012). Because the relief Adebowale seeks here is a declaration that an order of removal is void, the Court lacks subject matter jurisdiction under § 1252(a)(5).

Next, the government argues that Adebowale's challenges to USCIS's failure to exercise jurisdiction over his adjustment of status petitions are moot because Adebowale has received the relief requested: USCIS accepted that it had jurisdiction over Adebowale's petitions and denied them on the merits. "If an event occurs while a case is pending that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, the case must be dismissed. *See Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011) (holding that a claim for benefits was moot where the defendant paid all of the requested benefits after the case was filed). Here, Adebowale has been provided with the relief sought in the complaint, namely, a merits adjudication of his adjustment of status petition. While it is possible for a plaintiff to stave off dismissal based on potential modes of relief not identified in the complaint, "to avoid dismissal based on mootness, the party seeking relief must demonstrate that the court's adjudication would

affect it in some way." *Id*. Adebowale's conclusory assertion that "hornbook law" suggests his claim gives rise to a damages award demonstrates nothing.

Adebowale also argues that USCIS's behavior is gamesmanship designed to evade judicial review. Indeed, the law does not countenance such behavior: where a defendant voluntary capitulates and provides a plaintiff with the relief sought, the case only becomes moot "if subsequent events made it absolutely clear that the wrongful behavior could not reasonably be expected to recur." *Ciarpaglini v. Norwood*, 817 F.3d 541, 545 (7th Cir. 2016). Undoubtedly, the timing of USCIS's *sua sponte* reversal suggests it was done in response to this lawsuit. But the Court sees no indication that, having accepted jurisdiction over Adebowale's adjustment of status petition, USCIS is at all likely to reverse course again, vacate its denial on the merits, and once more claim it lacks jurisdiction once this lawsuit wraps up. Adebowale's challenge to USCIS's failure to exercise jurisdiction over his adjustment of status petition is therefore moot, and not rescued by the voluntary cessation doctrine.

USCIS gave Adebowale what he wanted: merits review of his adjustment of status petition. This Court can do no more for him in that regard. In his briefing, Adebowale takes issue with the merits decision on his adjustment of status petition, and he and the government dispute whether the Court has jurisdiction over any challenge he may launch against it. But this debate is premature. On a motion to dismiss, the Court evaluates the sufficiency of a complaint; it does not assess hypothetical claims the plaintiff may assert. As is, the complaint—filed before the merits decision was issued—says nothing about and asks for no relief concerning that decision. And even if it did, if aggrieved by the merits decision, Adebowale is obligated to exhaust administrative remedies by renewing his adjustment of status petition in removal proceedings. *See* 8 C.F.R. § 245.2(a)(5)(ii)); *McBrearty v. Perryman*, 212 F.3d 985, 987 (7th Cir. 2000)

7

(holding that a suit was "premature" where immigrant who was denied an adjustment of status failed to exhaust administrative remedies). Neither the complaint nor Adebowale's briefing gives any indication that he has done so. Accordingly, this Court has no occasion to consider its jurisdiction to entertain a challenge to the merits decision.[7]

\* \* \*

For the foregoing reasons, the motion to dismiss is granted. The dismissal is with prejudice as to claims presented in the complaint, and this case, but is without prejudice to any future challenge Adebowale may present with respect to the denial of his adjustment of status petition.

Dated: June 28, 2018

John J. Tharp, Jr.
United States District Judge

---

[7] Adebowale's request for a writ of mandamus instructing USCIS to scrub all remnants of the domestic violence allegations against him is also wholly without merit. "Mandamus relief will be granted if the plaintiff can demonstrate that the three enumerated conditions are present: (1) a clear right to the relief sought; (2) that the defendant has a duty to do the act in question; and (3) no other adequate remedy is available." *Iddir v. I.N.S.*, 301 F.3d 492, 499 (7th Cir. 2002). The Court can conceive of no "clear right" Adebowale possesses that would entitle him to the relief he seeks, nor can it identify any duty immigration officials have to scrub the allegations against Adebowale from its records.